May Term,
1856.

BALL
v.
COX.

———————

BALL *v.* COX.

Where the record does not contain the evidence, if the instructions of the Court would be correct under any supposable state of facts, they will be presumed to have been correct.

The Court, in recapitulating the evidence to the jury, should not state what it proves, but only what it conduces to prove, leaving its weight to be determined by the jury.

The closer the statute of frauds can be adhered to, consistently with controlling judicial authority, the better.

An acquiescence of twenty years is, as a general rule, necessary to support an implied agreement in respect to a boundary differing from that clearly expressed in the title deeds.

An intruder, without any claim or color of title, will not be allowed to acquire rights on easier terms than one who holds under an adverse possession.

ERROR to the *Tippecanoe* Circuit Court.

STUART, J.—Ejectment for a strip of land four feet and a half wide by a hundred and thirty feet long, running centrally across lots forty-three and forty-four, in the original plat of *Lafayette.* Trial by jury. Verdict and judgment for the defendant. At the proper time, a motion for a new trial was made and overruled; but the record does not purport to contain all the evidence. *Ball,* the lessor of the plaintiff, prosecutes error.

It is clear that the judgment below must be affirmed, unless the instructions given by the Court and excepted to by *Ball,* are erroneous under any state of the evidence

Wednesday,
*May* 28.

May Term,
1856.

BALL
v.
COX.

which could reasonably be presumed. *Murray* v. *Fry*, 6 Ind. R. 371. The facts, so far as disclosed by the record, will aid in seeing the scope of the instructions complained of.

The original division of the lots was from east to west. As divided and occupied by the parties to this suit, the line runs north and south; each owning a half of each lot. *Cox* owns the west halves; *Ball* the east. The dimensions of the lots are sixty-six by a hundred and thirty-two feet—so that each should own sixty-six feet on *Main* street. The streets, *Main* street in front, and *Ohio* on the east of these lots, are recorded as sixty feet wide.

From the record and the admissions in argument, it appears that the lessor of the plaintiff proved a complete title to each of the east halves of these lots; and *Cox* a like title to the west halves. In what terms the boundaries were described in the deeds, is not disclosed. It is said there was evidence tending to establish that the strip of land in dispute, was a part of the east halves of the lots; and also evidence that the grantor of *Cox* (who was the grantee of *Ball*,) about eighteen years before the commencement of this suit, erected a brick building covering the whole front on *Main* street, including the four feet and a half in dispute. A board fence was also erected from the corner of the brick building, directly across the lots from south to north, embracing the disputed strip on the west side. This fence remained, it seems, some eighteen years after its erection.

It does not appear that during all this time *Ball* set up any claim, or made any objection. On the contrary, he seems to have either willingly or ignorantly acquiesced.

Sometime in 1830, *Ball* himself erected a brick building on the east half of lot forty-four, fronting on *Main* street, placing his west wall close up to the east wall of that erected by the grantors of *Cox*. *Ball* also occupied a frame building on the east half of the lot, as a place of business. Thus matters stood till 1845, when the brick on the west end of lot forty-four was destroyed by fire. When *Cox* began to clear off the rubbish, with a view to

rebuild, *Ball* gave him notice, dated *April* 15, 1850, that he would, on the 26th of the same month, call in the county surveyor to "ascertain, establish and perpetuate" the boundary line between them. From that survey, it appeared that the four and a half feet in controversy was part of the east halves of the lots.

In *April*, 1850, then, *Ball*, for the first time, set up a claim to the land in dispute.

In the argument, it is taken for granted on both sides, that the acquiescence was only for a period of eighteen years; though we can not readily see, from the glimpses of the evidence afforded by the record, why it is not over twenty years. But it will be safer, perhaps, to follow the admissions of counsel.

In favor of *Ball's* claim, it appears that the disputed land is part of the east half of the lots; in favor of *Cox's* claim, it appears that he and his grantors had held, and improved and enjoyed the four and a half feet, without dispute, for eighteen years before the commencement of the suit. The question is, can the line of *Cox's* brick wall and the fence be presumed from the facts to be the agreed boundary between the parties?

Without the evidence submitted to the jury, it is idle for this Court to attempt to conjecture what are the facts. For instance, it appears very clear that *Cox's* title was only for half the lots, viz., sixty-six feet on *Main* street. Now it might have appeared in evidence that *Cox's* actual possession was seventy feet, and *Ball's* only sixty-two feet. Or it might have appeared that while *Cox* and his grantors inclosed four feet of *Ball's* land, he, in turn, lapped over on the street four feet, thus giving him still sixty-six feet. And as far as we can conjecture from what appears of the evidence, this seems to have been the state of facts. *Cox* had seventy feet, *Ball* sixty-six feet, and *Ohio* street, which was sixty feet wide, and so recorded, was reduced to fifty-six feet. Had we the facts before us, we should be slow to affirm a judgment which would thus throw the plat of the city of *Lafayette* out of joint, unless we felt constrained to do so by the controlling weight of the au-

thorities. And there is certainly no such strongly marked line of decisions, either in the cases cited by counsel, or in any other adjudications that have come under our observation.

Many other circumstances might have been in evidence, which would have justly had great weight with the jury. Thus the fact that *Ball* was the original owner of both lots and the grantor of *Cox's* vendors, would, if it were in evidence, be a very strong circumstance against the tardy claim of the lessor of the plaintiff. That is, it would tend strongly to prove an established boundary on a line different from the true one, by the agreement of *Ball* and the vendors of *Cox*. For *Ball* could not be presumed to be ignorant of the boundaries of the parts of lots forty-three and forty-four, which he had assumed to convey; particularly as during the whole period of such notorious occupancy by *Cox's* vendors and himself, the lessor of the plaintiff lived in *Lafayette*, owning and doing business upon part of the same lots.

On the other hand, the evidence might have showed that the possession of *Cox* and his vendors was a mere permissive possession, without any claim or color of title, which the lessor of the plaintiff, trusting to the well-known law of limitation and adverse possession, tolerated so long as he deemed it safe to do so. Thus might *Ball* have permitted it to run for eighteen years. And he might have properly deemed it a fitting time, as on the hypothesis of permissive possession it assuredly was, when the former building was removed and another about to be erected, to terminate that possession. This would be further strengthened, if it appeared in evidence that *Cox* and his vendors listed for taxation and actually paid tax upon sixty-six feet, while they were in possession of seventy feet.

These, and many other *indicia* of the purposes and intentions of the parties, might have been in evidence—acts *in pais*, furnishing to the jury the basis of a clear and accurate result. But we can not indulge in hypotheses. To tell us in the record that there was evidence tending to prove a certain fact, and other evidence tending to prove

the contrary, gives us nothing on which we can act. We
can not say which tendency preponderated.

So far, therefore, as the correctness of the verdict on the
evidence is concerned, we are not in a position, upon this
record, to inquire.

It but remains to look into the instructions; and if they
are correct, under any supposable state of facts, the judg-
ment below must be affirmed. These instructions, being
of importance in like cases, are given *in extenso:*

"If the jury believe from the evidence that *Ohio* street
is but fifty-six feet wide, and has in fact so been for over
twenty years by common consent, this fact limits it to
that breadth, notwithstanding it is designated in the town
plat as being sixty feet.

"If the jury believe, from all the evidence in the cause,
that a division line was settled upon in the minds of *Ball*
and the owners of the west half of lots forty-three and
forty-four, for a longer time than twenty years past, then
the plaintiff can not recover.

"If the jury find from the evidence that more than eigh-
teen years before the bringing of this suit, the grantors of
*Cox*, whose title he now holds, were the owners in fee of
the west half of lots forty-three and forty-four in the origi-
nal plat of the town of *Lafayette;* that at the same time
*Ball* had, and still has, title to the east half of said lots;
that about eighteen years ago, *Cox's* grantors built a brick
building covering the whole part of the ground in dispute
on *Main* street, and about the same time constructed a
fence on a direct line with the east end of said brick
building, entirely across said two lots, thus covering with
said brick building, and including within said fence, all the
ground in dispute; that *Ball*, at the time, and for several
years thereafter, occupied a small frame building on the
east end of one of the lots, as his regular place of busi-
ness, and from thence has continually resided in the town
of *Lafayette;* that *Ball*, a few years after the erection of
said brick building, erected on the east half of said lots a
brick building, the west wall thereof against the east wall
of the one so erected by *Cox's* grantors; that the building

and fence so erected by *Cox's* grantors, remained standing till the fall of 1845, when they were destroyed by fire; that soon after said fire, *Cox* acquired his title; that *Ball* never made any objection to the erection of said building and fence by *Cox's* grantors, nor to their continuance, nor did he assert any claim to the ground in controversy till a few weeks before the commencement of this suit, when *Cox* was removing the rubbish from the ground in dispute, preparatory to building thereon; then the jury will find from these facts, that *Ball* acquiesced in the line on which said fence was placed and said brick building erected by *Cox's* grantors, and he can not now be permitted to dispute this line as the true boundary, having so long acquiesced in it; and the jury must find for the defendant, though they may be satisfied that the ground in dispute is really a part of the east half of said lots forty-three and forty-four, and not a part of the west half thereof."

We think these instructions erroneous. It may be premised that in this style of instructing a jury, there is great danger of withdrawing from that body the determination of the facts. The Court assumes to recapitulate the evidence and tell the jury what must be their conclusions. If evidence is to be recapitulated, the jury should not be told what it proves, but only what it may conduce to prove—leaving, however, its weight with them. Every practitioner must have felt how even the fairest statement of the evidence on the part of the Court, tends to imbue the jury with the judicial leaning, whatever it may be, and thus, in effect, shape the verdict.

In the second place, the instructions throughout take it for granted that even where there is no pretence of an agreed boundary, acquiescence for a less period than twenty years, will estop the lessor of the plaintiff from setting up any claim. Thus in the second instruction, where twenty years is indeed mentioned, it is in a way to mislead. It is stated as twenty years *past*, which clearly means twenty years before the trial; whereas the suit had then been pending over two years. This tended to give

the jury an erroneous impression as to the limit or terminus of the twenty years.

So long as we pretend to be governed by the statute of frauds and the statute of limitations, some practical and common-sense effect should be given to them. The provisions of the statute of frauds as to what shall be essential to pass title, are familiar. The closer they can be adhered to, consistently with controlling judicial authority, the better. Otherwise these acts become a snare rather than a protection. If, in the absence of an express or any very strongly implied agreement as to boundary, a less period than twenty years' acquiescence will suffice, there is no foreseeing the end. It will gradually be diminished until a bold possessor, backed by a presumed consent, may make the best title wholly insecure. Such a course of decision would render the statute of frauds a dead letter, and the statute of limitations a tedious impediment.

We have been referred by counsel for *Cox* to *Rockwell* v. *Adams*, 6 Wend. 467, which, it is insisted, is not overruled by *Adams* v. *Rockwell*, 16 Wend. 285. But it is so regarded by *Greenleaf*, in his Overruled Cases; and by *Lockwood*, in his *New-York* Overruled Cases, p. 16. The case in 6 Wendell, between the same parties, and involving a similar question at least, was reversed in the Court of Errors, as reported in 16 Wend., *supra*.

Prior to this case of *Adams* v. *Rockwell*, there are numerous decisions in the *New-York* Courts on analogous questions, and perhaps not very easy to be reconciled with any clearly established principles, or with each other. Thus, in *Jackson* v. *Van Corlaer*, 11 Johns. R. 123, an agreement to settle a doubtful boundary, carried out by a practical location, was sustained. So *Jackson* v. *Freer*, 17 Johns. R. 29, and *Jackson* v. *Hubble*, 1 Cowen 613.

In all the earlier cases in the *New-York* reports, involving questions of boundary not settled by express agreement, great stress is laid on the fact that the disputed boundary was acquiesced in for a period of twenty years and upwards. *Jackson* v. *Bowen*, 1 Caines 358.—*Jackson* v. *Dysling*, 2 *id*. 197.—*Jackson* v. *Vedder*, 3 Johns. R. 8.—

*Jackson* v. *Dieffendorf*, *id.* 269.—*Jackson* v. *Douglas*, 8 *id.* 367.—*Jackson* v. *Smith*, 9 *id.* 100.—*Jackson* v. *Mc Call*, 10 *id.* 377.—*Mc Cormick* v. *Barnum*, 10 Wend. 104. Several of these cases are referred to by counsel, and we have examined them with some care. In all of them the acquiescence in the boundary from which an agreement was implied, varied from twenty to forty years. It is these, and similar cases, that the Courts of that state speak of as implying an agreement from long acquiescence.

It is true, the cases immediately prior to 16 Wendell, *supra*, among them 6 Wendell, *supra*, seem to admit, that under particular circumstances, acquiescence for a shorter period than twenty years might be sufficient from which to imply an agreement. Thus, in *Adams* v. *Rockwell*, the Supreme Court held eleven years sufficient. 6 Wend. 467. In *Jackson* v. *Gardner*, sixteen years was held sufficient. 8 Johns. R. 394. And it is intimated in *Adams* v. *Rockwell*, 16 Wend. 285, that had expensive improvements been made during the period of acquiescence, the owner would have been estopped. But this point was not in the record, and can not be regarded as an adjudication. In that case, the Court of Errors did reverse the decision of the Supreme Court, on the ground that an occupation of wild land up to a given boundary, acquiesced in for eleven years, was not sufficient from which to imply an agreement.

Upon a careful examination of the cases, we can not but regard the weight of authority, and the better reason, with that class of decisions which hold, as a general rule, that twenty years' acquiescence is necessary to support an implied agreement in a boundary variant from that clearly expressed in the title deeds.

In further confirmation of this view, we are greatly strengthened by a case in *Massachusetts*, where it is held that when parties have established a fence varying from the line described in the deeds, and each party has held and occupied up to his side of the fence, claiming to hold accordingly, for twenty years, neither can maintain a pos-

sessory action against the other. *Burrell* v. *Burrell*, 11 Mass. R. 294.

Here, then, in the case at bar, there was no pretence of a paper title in the vendors of *Cox.* There was no parol agreement as to the boundary line between *Ball* and *Cox*, or any one under whom *Cox* claims. The very terms of the deeds constituting *Cox's* chain of title, seem to have left the boundary line between the half lots an open question to be settled by survey. It would seem that the deed of *Cox*, as well as the deeds of those under whom he claimed, called for the west half of lots forty-three and forty-four. The boundary between the east and west half of those lots was an open line. It appears that both *Ball* and the vendors of *Cox* were ignorant where it was. The latter undertook to establish it by acts *in pais*, no doubt supposing they were occupying up to the true line. *Ball* submitted to it on the same erroneous supposition. In such a state of facts, we think it clear from the general current of authorities, that nothing short of twenty years' acquiescence will estop the real owner, if even that would, under such a state of facts, be sufficient to work an estoppel. It would be clearly against the policy both of the statute of frauds and the statute of limitations, to allow a mere intruder, without any claim or color of title, to acquire rights on easier terms than those who hold under an adverse possession. As the vendors of *Cox* found it for their interest to act first in improving their half of the lots, it became *their* duty rather than that of the other passive owner, to take the initiative in ascertaining the true boundary. They intruded on the east half of the lots at their risk.

The instructions being thus clearly erroneous, under any state of the evidence, the motion for a new trial should have been sustained.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*Z. Baird*, for the plaintiff.

*G. S. Orth* and *E. H. Brackett*, for the defendant.