**Jessie L. PAYTON and James Payton, Appellants,**

v.

**Clarence HADLEY and Melvin Moore, Appellees.**

No. 49A02–0403–CV–211.

Court of Appeals of Indiana.

Dec. 15, 2004.

Stuart T. Bench, Bench Law Office, Indianapolis, IN, Attorney for Appellants.

Craig D. Doyle, Joanne B. Friedmeyer, James L. Shoemaker, Doyle & Friedmeyer, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Roger E. Harvey sold the same parcel of property first to James Payton and then to Clarence Hadley and Melvin Moore ("the Subsequent Purchasers"). Both deeds were recorded on different dates in 2000. Thereafter, the Subsequent Purchasers filed, in part, a quiet title and declaratory judgment action and moved for summary judgment. The trial court granted the summary judgment motion declaring that Payton's deed for the parcel in question was void and quieted title in the Subsequent Purchasers. Payton and his wife Jessie (collectively "the Paytons") now appeal, and we address the following dispositive issue: whether the trial court erred as a matter of law when it concluded that Payton's deed to the disputed parcel was void ab initio.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

Until late 1996, Harvey and his now former wife Sandra owned approximately

four acres on West Washington Street in Indianapolis. Included in those four acres were three parcels: (1) the bookstore parcel; (2) the parking lot parcel; and (3) the south parcel. Both the bookstore parcel and the parking lot parcel front West Washington Street, with the bookstore parcel situated east of the parking lot parcel. In between those parcels, there is a twenty-foot driveway used for ingress and egress. The south parcel is situated directly south of the bookstore parcel, the parking lot parcel, and the twenty-foot driveway.[1]

In November 1996, the Harveys conveyed the bookstore parcel by Warranty Deed to Jessie Payton, and that deed was recorded in the Marion County Recorder's Office in December 1996.[2] Thereafter, in January 1999, Harvey entered into a land sale contract with James Payton to sell him the parking lot parcel, which provided in relevant part:

[Harvey] hereby agrees to sell [Payton], and [Payton] hereby agrees to purchase from [Harvey], the following described real estate situated in Marion County, State of Indiana, more specifically defined as the present property directly adjacent to (west of) 4903 W. Washington Street, Indianapolis, Marion County, State of Indiana, which presently constitutes the "parking" lot for the business and building, an area approximately one hundred [sic] (120) feet by one hundred [sic] (120) feet, which is the subject of a pending contract (lease) by and between these parties; with [Payton] receiving a permanent easement for ingress and egress over a twenty (20) foot driveway to be owned and retained by [Harvey].

Appellants' App. at 59.

James made all payments required under the contract. In August 1999, Harvey and James executed another agreement which incorporated the first contract by reference and in which Harvey agreed to execute and deliver a Warranty Deed by no later than November 1, 1999. Around that time, Harvey was in the midst of a divorce and had suffered a personal tragedy. Harvey did not provide a deed as required, and James filed his Complaint for Specific Performance of Contract, Damages, and Attorney's Fees in the Marion Superior Court ("specific performance suit"). As part of his prayer for relief in the specific performance suit, James asked the trial court to order Harvey to execute a Warranty Deed or, in the alternative, to appoint a Commissioner "for the limited purpose of executing a deed, and any and all documents necessary in order to transfer ownership, possession and control of the property as set forth in the contract[.]" Appellees' App. at 3.

Harvey did not file an Answer in the specific performance suit. In May 2000, the trial court in that case issued its Order Granting Default Judgment and for Appointment of Commissioner, in which the court (1) entered a default judgment against Harvey; (2) appointed Lynn Jackson as Commissioner for the sole purpose of "executing a warranty deed for transfer of the property set forth in [James'] Complaint and attached exhibits, in order to accomplish 'Specific Performance' of the contract between the parties[,]" Appellants' App. at 173; (3) ordered James'

1. Our description of the three parcels is based on a hand-drawn map, which is not to scale, contained in the Third Affidavit of Roger E. Harvey and which Harvey designated at summary judgment.

2. James Payton's name did not appear on the Warranty Deed.

counsel, Stuart L. Bench, to prepare a warranty deed sufficient for signature and transfer of said property; and (4) scheduled a hearing on damages and attorney's fees.

On May 16, 2000, Commissioner Jackson executed a Warranty Deed ("Commissioner's Deed") transferring the parking lot parcel not to James but to his wife.[3] The description of the fee simple title conveyed by the Commissioner's Deed includes the property over which the twenty-foot ingress and egress easement is located. The Commissioner's Deed was recorded in the Marion County Recorder's Office on May 17, 2000.

Thereafter, Harvey, who had other contracts with James, informed James that he had no cash, money, or other assets. James agreed with Harvey that he "would not proceed any further towards damages against him[.]" Appellants' App. at 185. James then asked his counsel to dismiss any pending claims against Harvey. In October 2000, James moved to dismiss his pending suit, and the trial court issued its Order of Dismissal the following month.

Approximately three months before the dismissal of James' suit against Harvey, Harvey executed a Warranty Deed transferring to the Subsequent Purchasers all three parcels, namely, the bookstore parcel, the parking lot parcel, and the south parcel, including the twenty-foot ingress and egress easement. Harvey executed the Warranty Deed conveying these parcels to the Subsequent Purchasers on July 28, 2000, which was two months after the Commissioner's Deed had been recorded. At the time Harvey executed the Warran-

ty Deed, the Subsequent Purchasers understood that they would be purchasing the entire four-acre tract *except* the bookstore parcel.[4]

On June 2002, the Subsequent Purchasers filed their Complaint against the Paytons, the Harveys, and Commissioner Jackson, and the complaint contained the following claims: Count I, Quiet Title against all defendants; Count II, Declaratory Judgment that the Commissioner's Deed is null and void; Count III, Slander of Title against Commissioner Jackson and the Paytons; Count IV, Breach of Warranty against Harvey; and Count V, Fraud against Harvey. The Paytons answered and filed a Third Party Complaint against the Harveys. In February 2003, the Subsequent Purchasers moved for summary judgment on Count II of their complaint, seeking a declaratory judgment that the Commissioner's Deed "is null and void and has no legal effect" on the disputed parcel in question. Appellants' App. at 132. The Paytons filed a cross-motion for summary judgment on Counts I, II, and III of the Subsequent Purchasers' complaint. Harvey responded that genuine issues of material fact precluded summary judgment.

The trial court held a hearing on the summary judgment motions in July 2003. In December 2003, the court issued its Entry of Summary Judgment and Decree Quieting Title, which provides in relevant part as follows:

> 3. On July 28, 2000, Roger Harvey executed a Warranty Deed transferring the following described real estate to Clarence Hadley and Melvin Moore:

---

**3.** Prior to the execution of the Commissioner's Deed, James had asked his attorney to "have [the] deed changed[ ] to allow the property to be transferred to [his] wife, Jessie L. Payton." Appellants' App. at 185. In his Affidavit, James explained that he did this

because Jessie retained ownership of many of their assets and the bookstore parcel had been conveyed to Jessie, not James.

**4.** Indeed, the Subsequent Purchasers make no claim to the bookstore parcel on appeal.

Lot 12 and the West Half of Lot 2, in Mary J. Smitson's Subdivision of part of the West Half of the Southeast Quarter of Section 7, Township 15 North Range 3 East of the Second Principal meridian in Marion County, Indiana as per plat thereof, recorded in Plat Book 14, page 77, in the Office of the Recorder of Marion County, Indiana except 568 feet of the entire South and West Half of Lot 2. (the "Real Estate").

4. Roger Harvey and Sandra Harvey had previously conveyed a portion of the Real Estate to Jessie L. Payton. This portion was of the northeast corner of the Real Estate and is further described as:

Part of Lot 12 in Mary J. Smitson's Subdivision of part of the West Half of the Southeast Quarter of Section 7, Township 15 North Range 3 East of the Second Principal Meridian in Marion County, Indiana [ ] as per plat thereof, recorded in Plat Book 14, page 77, in the office of the Recorder of Marion County, Indiana described as follows:

Commencing at the Northeast Corner of said Lot 12; thence South 01 degree 08 minutes 35 seconds West (basis of bearings being the Indiana State Plane Coordinate System East Zone–NAD 83) on and along the East line of said Lot 133.34 feet to a 5/8 inch by 35 inch rebar with a yellow plastic cap stamped MTA (hereinafter referred to as a MTA monument) and the Point of beginning; thence South 68 degrees 54 minutes 40 seconds West 41.24 feet to a chiseled cross in concrete; thence South 87 degrees 17 minutes 40 seconds West 41.36 feet to a MTA monument; thence North 01 degree 36 minutes 01 second West 63.36 feet on the southerly right of way line of U.S. Highway 40; thence North 68 degrees 32 minutes 25 seconds East on and along said right of way line 89.14 feet to a MTA monument on the East line of said Lot 12; thence South 01 degree 08 minutes 35 seconds West on and along said East lot line 79.18 feet to the Point of beginning. Containing 0.1393 Acres, more or less. ("Parcel 1 ["])

5. At the same time, the Harveys granted a five (5) foot easement and twenty (20) foot easement to Jessie L. Payton.

6. Unbeknownst to the Plaintiffs, on January 8, 1999, Roger Harvey had entered into a contract to sell another portion of the Real Estate to James Payton. The terms of the contract dictated that Roger Harvey would sell the "parking lot" located on the northwest corner of the Real Estate to James Payton with Mr. Harvey to retain ownership of the property over which the twenty (20) foot easement is located.

7. On February 23, 2000, James Payton filed a Complaint for Specific Performance of Contract, Damages and Attorneys fees in Marion County Superior Court No. 2 under Cause No. 49D02–0002–CP–0275 alleging that Roger Harvey had not transferred title to the "parking lot" to James Payton as required by the January 8, 1999 contract.

8. On May 9, 2000, Marion County Superior Court No. 2 issued an Order granting Default Judgment and for Appointment of a Commissioner. The Court appointed Lynn Jackson as Commissioner for the purpose of executing a warranty deed to transfer the property set forth in the Complaint.

9. On May 16, 2000, Lynn Jackson executed a warranty deed (the "Commissioner's Deed") transferring the "parking lot" as well as the property over

which the twenty (20) foot easement is located to Jessie Payton. This left the remaining portion of the Real Estate without access to Washington Street.

10. Regardless, on October 30, 2000, James Payton moved the Court to dismiss his Complaint, and an Order was entered on November 6, 2000 dismissing in its entirety the suit brought by James Payton against Roger Harvey.

11. *The Commissioner's Deed is not in conformity with the May 9, 2000 Order that authorized its execution. As such, the Commissioner's Deed was without legal authority, null and void and of no legal effect on the Real Estate.*

12. Plaintiffs Clarence Hadley and Melvin Moore are fee simple owners of the Real Estate with the exception of Parcel 1.

13. There is no just reason for delay, and [the court] directs that entry of judgment shall be a final judgment as contemplated by Trial Rule 54(B).

The Court hereby CONCLUDES:

1. The law is with the Plaintiff and against Defendants James Payton and Jessie L. Payton.

2. The May 16, 2000, Warranty Deed executed by Lynn Jackson and recorded as Instrument No. 2000-0077208 is void ab initio.

3. Title is hereby quieted in Clarence Hadley and Melvin Moore to the following described real estate: [description omitted].

4. Plaintiffs['] Motion for Summary Judgment is hereby GRANTED.

5. Defendants James Payton and Jessie L. Payton's Motion for Partial Summary Judgment is hereby DENIED.

Appellants' App. at 12–15 (emphasis added). The Paytons filed a Motion to Correct Error, which the trial court denied. This appeal ensued.[5]

## DISCUSSION AND DECISION

### Standard of Review

In determining the propriety of summary judgment, we apply the same standard as the trial court. *Ebersol v. Mishler,* 775 N.E.2d 373, 378 (Ind.Ct.App.2002), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Id.; see also Allstate Ins. Co. v. Smith,* 656 N.E.2d 1156, 1157 (Ind.Ct.App. 1995) (stating in context of cross-motions for summary judgment, trial court must

---

5. The Subsequent Purchasers moved for summary judgment on Count II of their complaint, which is the declaratory judgment action. The Paytons filed a cross-motion for summary judgment on Count II, and also moved for summary judgment on Counts I and III. Although the parties did not style their motions as such, both parties moved for partial summary judgment, and the trial court's summary judgment is a "judgment upon less than all the issues of liability[.]" Ind. Trial Rule 56(C). But because the trial court's December 16, 2003 entry contains the "magic language" required under Trial Rule 56(C), the Paytons' appeal is properly before us. *See Ramco Indus., Inc. v. C & E Corp.,* 773 N.E.2d 284, 288 (Ind.Ct.App.2002) (explaining Trial Rules 56(C) and 54(B) allow trial courts to certify interlocutory orders as final, appealable orders if court includes "magic language" that there is no just reason for delay and directs entry of judgment).

Still, our review of the Chronological Case Summary ("CCS") suggests that both the trial court and the parties consider the court's summary judgment as dispositive of *all* claims. But the trial court's summary judgment order does not address Counts III, IV, or V, and nothing in the CCS shows that those claims have been either dismissed or adjudicated on the merits. Again, we consider the trial court's summary judgment as a judgment upon less than all the issues of liability under Trial Rule 56(C). We further note that Harvey has not appealed the trial court's summary judgment.

deal with each motion separately, construing facts and inferences to be drawn therefrom in light most favorable to non-moving party). Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Id.* The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Id.*

The trial court in this case made findings and conclusions in support of its summary judgment entry. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. *Id.* If the trial court's summary judgment can be sustained on any theory or basis in the record, we must affirm. *Id.*

### Was the Commissioner's Deed Void?

■ The Subsequent Purchasers moved for summary judgment on the sole basis that the Commissioner's Deed which transferred the parking lot parcel from Harvey to Jessie Payton was void. The Paytons now challenge that conclusion as a matter of law. They argue further that because the Commissioner's Deed was not void, genuine issues of material fact exist which preclude summary judgment in favor of the Subsequent Purchasers.[6]

We begin our discussion by examining the Subsequent Purchasers' assertion that the Commissioner's Deed was void because of errors in the property description. Specifically, the Subsequent Purchasers point out that the Commissioner's Deed transferred property to the incorrect person and included property in addition to that which was described in the land sale contracts executed by James Payton and Harvey. The Subsequent Purchasers contend that while Commissioner Jackson had authority to execute the deed based on the trial court's Order Granting Default Judgment, the Commissioner's Deed does not conform in all respects to the description set forth in James' Complaint and attached exhibits. Thus, the Subsequent Purchasers assert that (1) the Commissioner lacked authority to execute the deed; and (2) the Commissioner's Deed was void. We cannot agree.

The Subsequent Purchasers direct us to no case law which holds that errors in a Commissioner's Deed render the deed void ab initio. Rather, they have pieced together general principles of law from various cases to support their contention. For example, they cite to this court's opinion in *Popovich v. Yugoslav Nat'l Home Soc'y*, 106 Ind.App. 195, 18 N.E.2d 948 (1939), for the proposition that "[i]t is axiomatic that in order to effectuate a valid transfer of legal title, a grantor must have legal authority to transfer the property." Brief of Appellant at 10. We held in *Popovich* that an unincorporated association, which has no independent legal existence apart from its individual members, "cannot, as a legal entity, dispose of property held by its members jointly or as tenants in common." 18 N.E.2d at 951. But our determination that an unincorporated association lacks legal authority to execute a deed has no bearing on whether the Commissioner's Deed in this case is void because of errors in the description.

The Subsequent Purchasers also direct us to *Wienke v. Lynch*, 407 N.E.2d 280 (Ind.Ct.App.1980), for the proposition that "[a] deed conveyed without legal authority is null and void." Brief of Appellant at 12. But *Wienke* involved a husband and wife who owned property as tenants by the entireties, and the wife conveyed property

---

**6.** The Paytons do not appeal the trial court's denial of their motion for summary judgment on Counts I and III of the Subsequent Purchasers' complaint.

to another without the husband's signature on the deed. On appeal, we agreed with husband's contention that the entireties relationship cannot be severed by the unilateral action of one tenant, and we stated that "[h]usband and wife have no separable interest in entireties property[;] therefore, a conveyance by one tenant is ineffective to pass legal title." *Id.* at 283. We then explained in a footnote in relevant part as follows: "Despite case law reference to unilateral conveyances of entireties property as 'void,' the more accurate term is 'inoperable.' *While a void deed passes no legal title,* an inoperable deed passes title upon compliance with a necessity [sic] condition." *Id.* n. 3 (emphasis added). Thus, to support their assertion that the Commissioner's Deed was void, the Subsequent Purchasers have extracted language from a footnote in a case that has nothing to do with the facts at hand.

Our research reveals no Indiana case law which supports the Subsequent Purchaser's position that the Commissioner's Deed was void as a matter of law because it contains errors in the description of the property conveyed. Regarding Commissioner Jackson's authority to execute the Commissioner's Deed, however, we find Indiana Trial Rule 70 instructive. Although neither party addresses it, Trial Rule 70 expressly authorized the trial court in this case to appoint Commissioner Jackson to execute the Commissioner's Deed. That Rule provides in relevant part:

(A) **Effect of judgment.** If a judgment directs a party to execute a conveyance of land, or other property or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when done so has like effect as if done by the party....

(B) **Recordation of judgment.** A copy of the judgment directing acts or divesting or vesting title of a deed or copy thereof transferring title as provided in subdivision (A) of this rule or other law may be recorded or filed either in the lis pendens records or the deed records of the proper officer and county or place and shall be appropriately indexed. When recorded or filed such record shall constitute constructive notice thereof in transactions with respect to the property under the recording laws, and a copy of such filed or recorded judgment or deed certified by the county recorder or other officer shall constitute prima facie evidence of its validity.

Subsection (C) of the Rule also sets forth a sample form for deeds "made by a court appointee as authorized by subdivision (A)[.]"

Here, when Harvey failed to respond to James' specific performance suit, the trial court entered a default judgment against Harvey and, consistent with Trial Rule 70, appointed Commissioner Jackson to execute the deed to effect specific performance of the land sale contracts between James and Harvey. Trial Rule 70(A) expressly provides that "the court may direct the act to be done ... by some other person appointed by the court and *the act when done so has like effect as if done by the party.*" (Emphasis added). Therefore, when Commissioner Jackson executed the Commissioner's Deed, it had the same effect as if Harvey had signed the deed himself. And if Harvey had signed a deed that contained errors in the description, which is not an uncommon occurrence, it does not follow that the deed would be void. Rather, there are a number of ways for the parties to correct such errors. As the Paytons point out, Jessie

could execute a quit claim deed conveying the property to James to be consistent with the land sale contracts. And the scrivener's error in the deed description could be corrected to conform to those agreements. *See* 66 AM.JUR.2D *Reformation of Instruments* § 19 (2001) ("Under the 'doctrine of scrivener's error,' the mistake of a scrivener in drafting a document may be reformed based upon parol evidence, provided the evidence is clear, precise, convincing and of most satisfactory character that the mistake has occurred and that the mistake does not reflect the intent of the parties.") (footnote omitted).

■ Most significantly, however, because the Subsequent Purchasers contend that the Commissioner's Deed conveyed more property than to which James was entitled under the parties' land sale contracts, it is their prerogative to seek reformation of the deed through their quiet title action,[7] which requires them to show by clear and convincing evidence that the property conveyed is not what Harvey intended. *See Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 160 (Ind.1994) (holding in part that party seeking reformation of deed must show the original intent or agreement of parties by clear and convincing evidence); *see also* I.L.E. Deeds § 247 ("A mistake in the description

contained in a deed is a fact which can be established by circumstances as well as by direct proof. Evidence of mistake in order to justify the setting aside of the deed must be clear and convincing.").

■ Errors in the legal description do not render the deed void as a matter of law, and the legal consequences of an erroneous deed must be determined on a case-by-case basis. The Subsequent Purchasers are essentially trying to obtain a "short cut" quiet title determination by seeking a declaratory judgment that the Commissioner's Deed is void, which would (1) relieve them of the clear and convincing burden of proof applicable to parties who seek the equitable remedy of deed reformation; and (2) enable them to avoid the fact-sensitive issue of whether they are bona fide purchasers of the parking lot parcel and the twenty-foot ingress and egress easement. *See Keybank Nat'l Ass'n v. NBD Bank*, 699 N.E.2d 322, 327 (Ind.Ct. App.1998) ("To qualify as a bona fide purchaser, one has to purchase in good faith, for a valuable consideration, and without notice of the outstanding rights of others.").[8]

The Subsequent Purchasers also contend, and the trial court in this case agreed, that the trial court's Order Grant-

---

**7.** The general rule is that one must be a party to or in privity with a party to the deed to be entitled to reform a deed. *See* 66 AM.JUR.2D *Reformation of Instruments* § 58 (2001). "Privity is defined as the mutual or successive relationship to the same rights of property, title, or estate. Persons are in privity, not with property, but with persons as related to the same rights in property." *Id.* at § 59 (footnotes omitted). Moreover, "[a] grantee of property succeeds to the grantor's right to maintain a suit to reform a prior deed." *Id.* (footnote omitted). Here, the Subsequent Purchasers are in privity with Harvey and are entitled to seek reformation of the Commissioner's Deed because Harvey was a party to that deed.

**8.** The Subsequent Purchasers do not respond to the Paytons' claim that there is a genuine issue of material fact whether the Subsequent Purchasers knew that Harvey had previously sold the parking lot parcel on contract to James Payton. As we have stated, their sole argument to the trial court and on appeal is that the Commissioner's Deed is void. Our review of the evidence designated at summary judgment shows that a genuine issue of material fact exists whether Harvey had told the Subsequent Purchasers that the Paytons owned the parking lot parcel before Harvey executed the warranty deed in July 2000.

ing Default Judgment gave Commissioner Jackson limited authority to the extent that the court ordered the Commissioner to execute a warranty deed "for transfer of the property *set forth in the Plaintiff's Complaint and attached exhibits* [.]" Appellants' App. at 173 (emphasis added). They maintain that Commissioner Jackson exceeded that authority, and, thus, that the deed was void when Commissioner Jackson executed a deed with a description different in some respects from that described in James' complaint and attached exhibits. But as we have already explained, the cases the Subsequent Purchasers have cited to support that assertion are inapposite and do not support a holding that Commissioner Jackson exceeded the authority granted by the trial court's Order Granting Default Judgment when she executed a deed that contains errors.[9] Also, in that order, the trial court directed James' counsel to prepare an "appropriate warranty deed sufficient for signature[ ] and transfer of said property." *Id.* Commissioner Jackson executed the deed James' counsel prepared pursuant to the trial court's order.[10] In sum, we conclude that Commissioner Jackson did not exceed her authority as an appointee under Trial Rule 70(A) when she executed a deed that contained errors in the descrip-

tion. We further conclude that the Commissioner's Deed was not void as a matter of law merely because it contains such errors.

■ Still, the Subsequent Purchasers argue in the alternative that the Commissioner's deed is void because James voluntarily dismissed the specific performance suit. In particular, they maintain that once James voluntarily dismissed his lawsuit, "the Commissioner's Deed [was] null and void because the legal authority by which it was entered was subsequently revoked by the dismissal." Brief of Appellant at 14. Again, we cannot agree.[11]

Indiana Trial Rule 41(A) governs voluntary dismissals and provides:

(1) *By plaintiff—By stipulation.* Subject to contrary provisions of these rules or of any statute, an action may be dismissed by the plaintiff without order of court:

(a) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, which first occurs; or

(b) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

---

**9.** We disagree with the Subsequent Purchasers' contention on page 16 of their Brief that our opinion in *Ault v. Clark*, 62 Ind.App. 55, 112 N.E. 843 (1916), "supports the trial court's finding that the Commissioner's Deed is void[.]" Rather, both parties discuss *Ault* in the context of the Paytons' assertion that the Subsequent Purchasers are, in effect, impermissibly collaterally attacking the trial court's default judgment and order appointing Commissioner Jackson in the specific performance suit. *Ault* has no bearing on whether the Commissioner's Deed is void because of errors in the description, and we need not reach the Paytons' collateral attack argument.

**10.** Again, James instructed his attorney to draft the Commissioner's Deed to transfer the property to his wife, Jessie, because she retained ownership of many of their assets and the bookstore parcel had been conveyed to Jessie, not James. *See* n. 3, *supra.*

**11.** The Paytons respond in part that the Subsequent Purchasers' argument regarding the voluntary dismissal lacks merit because the trial court did not grant summary judgment on that basis. As we have explained, however, we are not bound by the trial court's findings and conclusions, and if the trial court's summary judgment can be sustained on any theory or basis in the record, we must affirm. *See Ebersol*, 775 N.E.2d at 378.

*  *  *

(2) *By order of court.* Except as provided in subsection (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.... Unless otherwise specified in the order, a dismissal under this subsection is without prejudice.

James moved for dismissal by order of the court, and, thus, Trial Rule 41(A)(2) applies. This court has stated that a "voluntarily dismissal generally leaves the parties as if the suit had never been brought." *Bd. of Comm'rs of Cass County v. Nevitt,* 448 N.E.2d 333, 339 n. 5 (Ind.Ct.App.1983). But our discussion of that general rule in *Nevitt* was limited to a footnote, and the precise question posed in *Nevitt* was whether an order granting a voluntary dismissal is a final appealable order. *See id.* at 338–39. Thus, *Nevitt* is not dispositive, or even helpful, in this case.

Here, James explained in his Affidavit designated at summary judgment that he instructed his attorney to dismiss the specific performance suit after he spoke with Harvey and Harvey informed him that he had no assets. At that point, the trial court had already granted default judgment in James' favor, and the Commissioner's Deed had been recorded. The specific performance suit was still pending only because James had also asked for damages and attorney's fees, and the trial court had scheduled a hearing on those issues. Thus, by moving to voluntarily dismiss his suit, James was choosing to forego his pending claims against Harvey for damages and attorney's fees.

We hold that the general rule noted in the *Nevitt* footnote does not apply where, as here, James moved to voluntarily dismiss his specific performance suit *after* the Commissioner's Deed had been recorded. Put another way, James' voluntary dismissal of his lawsuit has no effect on the validity of the Commissioner's Deed because that deed had already been made and recorded pursuant to Trial Rule 70 and the court order before the court issued its order of dismissal. Indeed, the Subsequent Purchasers' contention that a voluntary dismissal somehow voids an otherwise presumably valid, recorded deed finds no support in the law and would discourage parties from settling related issues involving land after a proper deed has been recorded. James' voluntary dismissal of his specific performance suit did not void the Commissioner's Deed.

## CONCLUSION

We conclude that the trial court erred as matter of law when it entered summary judgment in favor of the Subsequent Purchasers on Counts I and II of their complaint. Regarding Count II, the Subsequent Purchasers are not entitled to a declaratory judgment that the Commissioner's Deed was void ab initio. And because the Commissioner's Deed is not void as a matter of law, we (1) reverse and remand with instructions to the trial court to enter summary judgment in the Paytons' favor on Count II; (2) reverse the trial court's entry of summary judgment on Count I quieting title to the parking lot parcel in favor of the Subsequent Purchasers; and (3) remand for further proceedings on Counts I, III, IV, and V of the Subsequent Purchasers' complaint and the Paytons' third party complaint.[12]

12. The issues left open on remand include, but are not limited to, who has legal title to the parking lot parcel and twenty-foot easement. The Subsequent Purchasers' and the Paytons' claims against Harvey are also left for resolution.

Reversed and remanded with instructions.

SULLIVAN, J., and BARNES, J., concur.