FILED

May 04 2023, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

James G. Pittman
Bedford, Indiana

ATTORNEYS FOR APPELLEES
ADAM R. NORMAN AND
MATTHEW A. NORMAN

David J. Theising
Harrison & Moberly, LLP
Indianapolis, Indiana

Pamela J. Hensler
Mallor Grodner LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MLS Enterprises, LLC,

*Appellant-Plaintiff/Counterclaim Defendant,*

v.

Adam R. Norman and
Matthew A. Norman,

*Appellees-Defendants/
Counterclaimants/Third-Party
Plaintiff*

May 4, 2023

Court of Appeals Case No.
22A-PL-2755

Appeal from the Lawrence Circuit
Court

The Honorable Erik C. Allen,
Special Judge

Trial Court Cause No.
47C01-2006-PL-699

**Opinion by Judge Bailey**
Judges Brown and Weissmann concur.

**Bailey, Judge.**

## Case Summary

MLS Enterprises ("MLS") and farmers Adam and Matthew Norman ("the Normans") possess adjoining properties in Lawrence County. MLS obtained a survey revealing an approximately one-quarter acre discrepancy between its deed boundary and a fence boundary, with one fence line deviation favoring MLS and one favoring the Normans. MLS filed an action to quiet title in itself to approximately one-tenth of an acre used by the Normans for agricultural purposes.

The Normans counterclaimed and moved for partial summary judgment. They asserted that MLS held a deed with a legal description inconsistent with that in a Quit Claim Deed given to MLS's predecessor. The Normans also asserted that they had acquired title to the disputed land by either acquiescence or adverse possession. The trial court granted partial summary judgment to the Normans, without articulating specific grounds therefor, and entered the order as a final and appealable judgment. MLS challenges the grant of partial summary judgment. We affirm.

## Issues

MLS presents two consolidated and restated issues for review:

I. Whether the trial court abused its discretion in the admission of designated evidence by denying MLS's motion to strike two paragraphs from Adam's affidavit; and

II. Whether partial summary judgment was improvidently granted.

# Facts and Procedural History

In 1961, 1977, and 1988, Hugh and Georgia Gresham jointly acquired land in Lawrence County aggregating to 304 acres. After Georgia's death in 1999, Hugh owned the land. At some point, he deeded a portion of the land to his heirs, but in 2012 they deeded the land back to Hugh by a Quit Claim Deed.

From 1999 until November 5, 2019, Hugh leased part of his acreage, located to the north of Gresham Road, to the Normans and their father for farming purposes. On January 31, 2006, Hugh sold 140 acres to the Normans. Prior to the sale, the parties walked the land, and Hugh pointed to a wire fence extending over a portion of the real estate. Woods were on one side and agricultural land on the other side. After the sale, the Normans used the property up to the wire fence for agricultural purposes, including the pasturing of livestock. In 2007, the Normans re-strung some of the fence with barbed wire. In 2012, they erected an electric fence just inside the wire fence. According to the Normans, they understood that the wire fence was the boundary line between the Gresham/Norman properties.

[6] Hugh died in June of 2019. On November 5, 2019, Hugh's estate sold 164.66 acres to MLS. In conjunction with its purchase of land, MLS commissioned a land survey ("the Oakley survey"). MLS concluded that the deed line and fence line differ; more specifically, that the wire fence encroaches in two areas. The first difference between the deed line and fence line is a tract of 0.103 acres to the east, occupied by MLS. The second is a tract of 0.099 acres to the west, occupied by the Normans.

[7] On June 19, 2020, MLS filed a Complaint to Quiet Title to Real Estate ("the Complaint") naming the Normans as defendants. MLS contended that it owned all property described in a 2019 Personal Representative's Deed from Brenda McCammon, JoEllen Powell, and Carolyn Zeeks (Hugh's heirs). The Normans filed an answer and counterclaim. In Count 1, the Normans sought to quiet title to the 0.099-acre tract in themselves. Count 2 alleged a claim for trespass against MLS, related to alleged spraying of chemicals onto agricultural crops.[1] The Normans asserted that a legal description attached to the Complaint, based upon the Oakley survey, is inconsistent with that in a deed of prior conveyance. The Normans also claimed to have acquired title by acquiescence, or alternatively, by adverse possession.

[8] After MLS answered the counterclaim and discovery commenced, the Normans engaged Lawrence County Surveyor Corey Allen to perform a

---

[1] This trespass claim is pending in the Lawrence Circuit Court and is not a subject of this appeal.

boundary retracement survey of the disputed land. Subsequent to receipt of Allen's report and survey ("the Allen survey"), the Normans were granted leave to file an amended counter-complaint. They added Farm Credit Mid-America, FLCA ("FCMA") as a third-party defendant.[2] FCMA filed an answer and asserted that it holds a lien against the real estate described in the Complaint. MLS was permitted to amend its complaint to add Count 2, a claim of adverse possession as to the 0.103 acres occupied by MLS.

[9] On February 28, 2022, the Normans filed a motion for partial summary judgment upon the competing quiet title claims set forth in the Complaint and Count 1 of the counterclaim. The Normans submitted as designated materials the affidavits of Adam and Allen. In moving for summary judgment, the Normans pointed to Allen's discovery of a discrepancy between the legal description in Exhibit A to the Complaint and a legal description contained in a 2012 Quitclaim deed from Hugh's heirs, by which Hugh had acquired title to part of the real estate later conveyed to MLS. MLS and FCMA filed responses in opposition to the motion for partial summary judgment, designated materials in opposition, and moved to strike several portions of Adam's affidavit.

[10] On August 12, 2022, the trial court conducted a hearing. No party having moved to reform the deed based upon either the Oakley survey or Allen survey, argument was heard solely upon claims of acquisition of title by acquiescence

---

[2] FCMA is not an active participant in this appeal.

or adverse possession. On August 17, 2022, the trial court entered its order, granting in part and denying in part the motion to strike portions of Adam's affidavit. On the same day, the trial court entered an order granting the Normans' motion for partial summary judgment and directing its entry as a final appealable judgment. MLS filed a motion to correct error, which was summarily denied. This appeal ensued.

# Discussion and Decision

## Admissibility of Portions of Adam Norman Affidavit

[11] Indiana Trial Rule 56 permits parties to submit affidavits and evidence in support of their motions for summary judgment. That rule states in relevant part:

> [A] party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. ... Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Ind. Trial Rule 56(C)-(E). "Thus, in ruling on a motion for summary judgment, the trial court will consider only properly designated evidence which would be admissible at trial." *Zelman v. Capital One Bank (USA) N.A.*, 133 N.E.3d 244,

248 (Ind. Ct. App. 2019). We accord great deference to the evidentiary rulings of the trial court and will reverse only for an abuse of discretion. *Blevins v. Clark*, 740 N.E.2d 1235, 1238 (Ind. Ct. App. 2000). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances set before it. *Id*.

[12] FCMA moved to strike portions of Adam's affidavit on hearsay grounds. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ind. Evid. Rule 801(c). The trial court granted the motion in part and denied the motion in part. At issue here is the language of Paragraphs 14 and 15:

> 14. In late 2005, prior to purchasing the Norman Property from Hugh F. Gresham, my brother Mathew A. Norman and I walked the Norman Property with said Hugh F. Gresham, who pointed out the Partition Fence as the boundary line between the Norman Property and the MLS Property north of Gresham Road.

> 15. Since acquiring title to the Norman Property in 2006, my brother Mathew A. Norman and I had an understanding and agreement with said Hugh F. Grisham that the Partition Fence was the boundary line between the Norman Property and the MLS Property north of Gresham Road.

(App. Vol. II, pg. 122.)

[13] In these paragraphs, Adam did not repeat statements made by another person. Adam's averments pertain to conduct that he says he observed – pointing to a fence – and to his own assessment that the fence in question functioned as a

partition fence pursuant to an agreement. Such would have been admissible had Adam testified at a trial. However, as we will expand upon below, Adam articulated no statement from Hugh to support Adam's subjective belief that an agreement had been reached. We find no abuse of discretion in the trial court's admission of the two challenged paragraphs of Adam's affidavit.

## Summary Judgment

[14] Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). But summary judgment is not a means for resolution of factual disputes and "should not be used as an abbreviated trial, even where the proof is difficult or where the court may believe that the non-moving party will not succeed at trial." *Pierson ex rel. Pierson v. Serv. Am. Corp.*, 9 N.E.3d 712, 715 (Ind. Ct. App. 2014), *trans. denied*. We review de novo whether the trial court properly granted summary judgment. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[15] When we review a grant of summary judgment, our standard of review is the same as that of the trial court. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind. 2002). We consider only those facts that the parties designated to the trial court. *Id*. The Court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Id*.

[16] A trial court's order on summary judgment is cloaked with a presumption of validity; the party appealing from a grant of summary judgment must bear the burden of persuading this Court that the decision was erroneous. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005), *trans. denied*. We may affirm the grant of summary judgment upon any basis argued by the parties and supported by the record. *Payton v. Hadley*, 819 N.E.2d 432, 438 (Ind. Ct. App. 2004). However, Trial Rule 56(H) specifically prohibits this Court from reversing a grant of summary judgment on the ground that there is a genuine issue of material fact, unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 45 (Ind. Ct. App. 2004).

[17] In this case, the parties agree that a wire fence has stood at the subject property for many years. Mature trees have been used as fenceposts in some portions. In addition to the Normans' observations commencing with their 1999 lease, the Lawrence County surveyor, in completing the Allen survey, uncovered evidence that an earlier fence had existed at the same location. At the disputed area, one side was used for agricultural purposes up to the fence and the other – wooded – side was not appropriate for or utilized for agricultural purposes. Shortly after purchasing land from Hugh, the Normans restrung a portion of fencing. They subsequently installed electric fencing. Although these basic facts do not appear to be in dispute, the existence of a stated or implied boundary agreement between Hugh and the Normans is in dispute.

[18] The trial court did not articulate the basis for its decision. At the outset of our review, we observe that, due to disparate requirements, the same facts (even if undisputed) will not support both the doctrine of title by acquiescence and a claim of adverse possession.

[19] <u>Adverse Possession</u>. In *Fraley v. Minger*, our Supreme Court summarized and restated the common law doctrine of adverse possession:

> [T]he doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration, as follows:
>
> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
>
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
>
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and,
>
> (4) Duration—the claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

829 N.E.2d 476, 486 (Ind. 2005). Pursuant to Indiana Code Section 34-11-2-11, the required period of time is ten years.

[20] Also, the adverse possessor must pay "all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property during the period the adverse possessor claims to have adversely possessed the real property." I.C. § 32-21-7-1.1 "Substantial compliance satisfies this statutory tax payment requirement 'where the adverse claimant has a reasonable and good faith belief that the claimant is paying the taxes during the period of adverse possession.'" *Celebration Worship Center, Inc. v. Tucker*, 35 N.E.3d 251, 254 (Ind. 2015) (quoting *Fraley*, 829 N.E.2d at 493).

[21] Successive periods of possession may be tacked together to meet the requisite ten-year requirement. *Henry v. Liebner*, 32 N.E.3d 258, 268 (Ind. Ct. App. 2015), *trans. denied*. Once title vests in the adverse claimant at the end of the requisite ten-year period, the title may not be lost, abandoned, or forfeited. *Fraley*, 829 N.E.2d at 487.

[22] Here, the designated materials reveal the following. As to control over the disputed area, the Normans exercised a degree of use and control normal and customary considering the characteristics of the land. They used the area up to the wire fence for agricultural purposes, including pasturing of livestock. Their own intent to claim full ownership of the area is not a matter of dispute. With regard to actions providing actual or constructive notice to the legal owner, the Normans restrung fencing in 2007; they installed an electric fence; and they

released their livestock to graze up to the fence. This use has been continuous since 2006. As to the payment of taxes, the parties had paid the Lawrence County assessments for their respective parcels, but the fence boundaries were such that each had occupied some portion of land that the deed boundary would have allocated to the other. In these circumstances, the Normans claimed that they had achieved substantial compliance with the relevant statute for payment of taxes, and MLS did not counter this contention.

[23] To withstand summary judgment after the Normans made a prima facie showing of each element of adverse possession, it was incumbent upon MLS to come forward with some designated evidence to the contrary. They did not do so. Summary judgment was not improvidently granted to the Normans.[3]

---

[3] The Normans also contended that they are entitled to summary judgment on the basis of title by acquiescence. The doctrine of title by acquiescence was recognized by our Indiana Supreme Court in 1856. *See Ball v. Cox*, 7 Ind. 453 (1856). There, the deed to Cox had "left the boundary line … an open question to be settled by survey" and the Court recognized that estoppel might operate based upon the intent and conduct of the parties. *Id.* at 461. The applicable period was recognized as twenty years: "as a general rule, … twenty years' acquiescence is necessary to support an implied agreement in a boundary variant from that clearly expressed in the title deeds." *Id.* at 460. The Court explained its reasoning for the time frame:

> It would be clearly against the policy both of the statute of frauds and the statute of limitations, to allow a mere intruder, without any claim or color of title, to acquire rights on easier terms than those who hold under an adverse possession.

*Id.* at 461. Thereafter, our Indiana Supreme Court described the doctrine succinctly: "[t]he location of a division boundary line between two land proprietors, acquiesced in and acted upon, and the premises improved up to the line by each for twenty years, becomes binding as the true line." *Wingler v. Simpson*, 93 Ind. 201, 203 (1884).

Although seldom used as the law of adverse possession developed, the doctrine remains viable in some circumstances. *Huntington v. Riggs*, 862 N.E.2d 1263, 1267 (Ind. Ct. App. 2007), *trans. denied*. The doctrine of acquiescence applies only when:

# Conclusion

The trial court did not abuse its discretion in the admission of designated evidentiary materials. The Normans are entitled to summary judgment on an adverse possession claim.

Affirmed.

Brown, J., and Weissmann, J., concur.

---

two adjoining property owners (1) share a good-faith belief concerning the location of the common boundary line that separates their properties and, (2) although the agreed-upon location is not in fact the actual boundary, (3) use their properties as if that boundary was the actual boundary (4) for a period of at least twenty years. It is the original *agreement* between the adjoining owners that takes this and all other "acquiescence" cases out of the realm of adverse possession.

*Id.* at 1274 (J. Friedlander concurring, in which Judge Kirsch and Judge Riley join) (emphasis in original). We need not discuss the applicability of the doctrine here, because the Normans are entitled to summary judgment on a separate basis.