

IN THE

# Court of Appeals of Indiana

Samuel C. Arp, II,

*Appellant-Defendant*



FILED

Oct 07 2025, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Indiana State Police,

*Appellee-Plaintiff*

---

October 7, 2025

Court of Appeals Case No.
24A-PL-2694

Appeal from the Marion Superior Court

The Honorable John M.T. Chavis, II, Judge

Trial Court Cause No.
49D05-1911-PL-49888

---

**Opinion by Chief Judge Altice**
Judges Brown and Tavitas concur.

**Altice, Chief Judge.**

## Case Summary

[1] Samuel C. Arp II was an employee of the Indiana State Police (ISP), first as a state trooper, and then as an employee on disability status after he was injured in the line of duty. After being classified as permanently disabled, Arp began receiving long-term disability (LTD) benefits pursuant to the terms of a Pension Trust Agreement (the Trust) and Supplemental Trust Agreement (the Supplemental Trust) (together, the Trust Agreements). While continuing to receive LTD benefits, Arp attended law school. Upon his graduation and successful admission to the Indiana Bar, Arp worked as a deputy prosecuting attorney for Vanderburgh County. Then, in 2018, Arp ran for and was elected the Prosecuting Attorney for Lawrence County, Indiana, with his term to begin January 1, 2019.

[2] Pursuant to statute and internal policies and regulations, ISP deemed Arp's assumption of office as a full-time elected official as a resignation from his employment with ISP and therefore terminated nearly all his LTD benefits. Arp filed the instant lawsuit against ISP and four of its senior officers (collectively, ISP Defendants unless otherwise named individually) claiming that ISP (1) violated his contractual and statutory rights to LTD benefits, (2) breached fiduciary duties owed to him, and (3) deprived him of statutory and constitutional due process rights. He asserted claims for unlawful termination of employment, breach of contract, unlawful termination of benefits, breach of fiduciary duty, and due process violations against ISP. Arp also asserted a claim for specific performance of the Trust Agreements, namely, reinstatement

of his LTD benefits and credit for years of service, against the ISP Defendants. The parties filed cross-motions for summary judgment. The trial court granted ISP Defendants' motion for summary judgment on all of Arp's claims and denied Arp's motion for summary judgment. Arp appeals, presenting the following restated issues for our review:

> 1. Was Arp an ISP employee subject to ISP rules and regulations and the terms of the Trust Agreements after he was determined to be disabled?

> 2. Is ISP entitled to summary judgment on Arp's breach of contract and breach of statutory duty claims?

> 3. Is ISP entitled to summary judgment on Arp's claim for unlawful termination of employment?

> 4. Is ISP entitled to summary judgment on Arp's breach of fiduciary duty claim?

> 5. Did ISP's decision to terminate Arp's disability benefits violate Article 1, Section 12's Due Course of Law clause?

> 6. Is Arp entitled to specific performance by the ISP Defendants of the Supplemental Trust provisions?

We affirm.

## Facts & Procedural History

Arp was appointed to ISP on December 10, 2000. As part of his employment, Arp elected to participate in the LTD benefits program, the terms of which were

set out in the Trust Agreements. In 2006, Arp sustained extensive back injuries when he was struck by a drunk driver while on duty. Due to his injuries, Arp's last regular workday with ISP was September 23, 2007; he was subsequently classified as disabled and his last day on regular payroll for ISP was September 11, 2008. Thereafter, Arp received LTD benefits pursuant to the Trust Agreements, including a monthly disability payment based on years of service, a dependent stipend, a medical expense benefit, and an insurance premium benefit. In 2009, Arp's disability status became permanent, meaning it was determined that he had reached maximum medical improvement and would never return to regular service as an ISP trooper. ISP provided Arp with an identification card certifying that he was a commissioned ISP employee in disability status.

[5] In 2012, Arp notified ISP of his intention to attend law school. Arp claims that he inquired at that time whether becoming an attorney, and potentially an elected prosecutor, would affect his eligibility to continue receiving LTD benefits. Arp maintains that an unidentified lieutenant with whom he spoke advised him that neither would affect his LTD benefits. Arp also claims that around this same time he tried to obtain copies of ISP's relevant standard operating procedures and other documents pertaining to his LTD benefits but that he was denied access to them because he was no longer a sworn employee.[1]

---

[1] The designated evidence shows that the Trust and Supplemental Trust were publicly available on ISP's website as of June 21, 2008.

[6]     In 2014, Major Charles Sorrells, ISP's Assistant Chief of Staff of Human Resources and Administration, sent correspondence to Arp that stated: "At the time of your LTD request and subsequent approval, you were not separated (or your employment terminated) from the Department. For clarification, all LTD participants are still employees of the Department that are simply in a disability status." *Appellant's Appendix Vol. VII* at 174. Major Sorrells also reminded Arp that as an ISP employee, he was still governed by all ISP rules, regulations, and standard operating procedures. As an example, Major Sorrells pointed out that ISP employees must obtain approval from the Superintendent prior to engaging in non-departmental employment (NDE).

[7]     After Arp graduated from law school in 2017, he contacted Major Todd Smith, Chief Legal Counsel for ISP, and they discussed the possibility of Arp working for ISP's legal division. After several conversations, Major Smith confirmed that Arp would not be able to join ISP's legal division due to his disability status. Arp claims that he also raised the possibility of running for prosecutor and maintains that Major Smith did not advise him that if he did so, he would no longer be entitled to LTD benefits. Thereafter, Arp began his legal career with the Vanderburgh County Prosecutor's Office. Arp did not complete the required forms to seek approval of the Superintendent prior to engaging in such NDE.

[8]     In March 2018, Arp notified Captain Michael Wylie, who served in ISP's human resources division from 2006 to 2021, of his candidacy for elected prosecutor of Lawrence County and requested permission to use his official ISP

photo for his campaign. According to Arp, Captain Wylie did not advise Arp that he needed to complete paperwork for ISP regarding such NDE or that ISP would terminate his LTD benefits if he were elected prosecutor. Captain Wylie stated in his deposition that he told Arp he would need to resign from ISP if elected but he did not recall if he talked to Arp about the effect of such on his LTD benefits.

[9] After speaking with Arp, Captain Wylie completed an internal router to seek Superintendent Douglas Carter's approval for Arp to use his official ISP photo for his campaign. On the router, Captain Wylie noted that Arp was running for prosecutor. On the Superintendent's behalf, Colonel Mark French approved Arp's request to use his official ISP photo for campaign materials but did not require Arp to complete additional forms related to any potential NDE.

[10] Thereafter, Arp communicated with Major Sorrells regarding his candidacy for public office. At some point, Major Sorrells directed Arp to seek an ethics opinion from the Indiana Office of Inspector General regarding his run for prosecutor. In September and October 2018, Arp contacted the then-State Ethics Director, Jennifer Cooper, regarding whether "being a disabled Indiana State Trooper drawing an in-the-line-of-duty pension" and serving as Lawrence County Prosecutor conflicted with the dual office provision of Article II, Section 9 of the Indiana Constitution. Cooper advised that her office would not provide advice as to the dual office provision and urged Arp to contact the Office of the Attorney General and seek legal advice from an attorney "before

deciding to accept a second public service position." *Appellant's Appendix Vol. II* at 233.

[11] Arp sent a follow-up inquiry to Ethics Director Cooper on October 31, 2018. After receiving additional information from Arp, Cooper responded via email and informed Arp, in pertinent part, as follows:

> I understand you are seeking advice to determine if there would be any implications under the Indiana Code of Ethics (Code) if you were to serve as an elected prosecutor for Lawrence County, Indiana, while drawing a disability pension from the Indiana State Police.
>
> * * *
>
> Because you are not able to carry out the duties of a State Trooper and you are not actually performing work as a state employee – instead you are maintaining a state employee status but being compensated through a disability pension – it does not appear that you would have *any conflicts of interests* under [Ind. Code § 4-2-6-5.5 (the outside employment rule)].
>
> I would still recommend contacting ISP's Ethics Officer, Maj. Nila Miller-Cronk, who should be able to advise you as to whether serving as an elected prosecutor while maintaining your status as a state employee would create any conflicts of interests [sic] for you. Maj. Miller-Cronk could also advise you regarding any internal ISP policies that may apply.

*Appellant's Appendix Vol. III* at 2 (emphasis supplied). Arp never contacted Major Miller-Cronk.

[12] On November 9, 2018, Arp emailed Major Sorrells to inform him that he won the general election for Lawrence County Prosecutor and attached what he referred to as "a follow up letter from the Director of the Ethics board."[2] *Id.* at 14. Arp contacted Major Sorrells again on November 27 and December 3, 2018, following up on his November 9 email.

[13] On November 27, 2018, Major Sorrells forwarded Arp's email, along with the attachments, to Major Smith so he could "weigh in as to what Arp's status will be." *Appellant's Appendix Vol. V* at 49. Major Sorrells responded to Arp's December 3 communication that he was still waiting to hear back from the legal office for an answer.

[14] Major Sorrells and Major Smith collectively decided to seek additional legal guidance. On December 5, 2018, Major Sorrells contacted the law firm of Ice Miller LLP for legal advice regarding Arp's inquiries. Specifically, Major Sorrells sought legal advice on how, as an ISP employee on disability status, Arp's election to full-time office as the Lawrence County Prosecutor fit into ISP Regulation 6 (Regulation 6) and its applicability to Arp's LTD benefits. Ice Miller responded on December 12, 2018, with a memorandum, which Major Sorrells and Major Smith discussed with Superintendent Carter. Superintendent Carter made the decision to inform Arp that, pursuant to Title 10 of the Indiana Code and Regulation 6, he was required to resign from his

---

[2] The email attachments were not included with the email. Presumably, the "follow up letter" refers to Ethics Director Cooper's email responding to Arp's October 31 inquiry.

employment with ISP and thereby give up his LTD benefits given his election as the Prosecutor for Lawrence County. On December 18, 2018, Captain Wylie, at the direction of Major Sorrells, called to inform Arp of this decision.

[15] After speaking to Captain Wylie, Arp retained legal counsel who sent a letter to ISP requesting a written explanation for its demand that Arp resign and its decision to terminate his LTD benefits. On December 20, 2018, Major Sorrells sent a letter to Arp with the requested written explanation. Specifically, he noted that the decision was based on Regulation 6 and statutory authority found in Title 10. Specifically, Regulation 6(1)(E)(b) states that "[i]f elected or appointed to a position other than a part-time local elected office the employee *shall separate employment* from the Department and be off Department payroll before assuming office." *Appellant's Appendix Vol. II* at 221 (emphasis supplied). Regulation 6 parallels Ind. Code § 10-11-2-12(d) (Section 12), which provides that if an ISP employee is "elected to other than a part-time local elected office, the employee . . . *shall resign* as an employee . . . before assuming elected office." (Emphasis supplied).

[16] Arp's counsel sent another letter to ISP on December 27, 2018, seeking additional information as to ISP's position and notifying ISP that he had advised Arp to "stand down" on ISP's resignation request to ensure Arp preserved all legal rights if ISP terminated his disability payments. *Appellant's Appendix Vol. V* at 246.

Having not received Arp's resignation, on December 31, 2018, Major Sorrells contacted Arp and informed him that if ISP did not receive his resignation prior to midnight, ISP would assume he had resigned. Arp did not submit any form of resignation to ISP before the midnight deadline. On January 1, 2019, ISP processed Arp's separation from ISP employment. The following day, ISP terminated Arp's LTD benefits effective December 31, 2018.[3]

On November 27, 2019, Arp filed this lawsuit against ISP Defendants, raising claims of unlawful termination of employment, breach of contract, unlawful termination of benefits, breach of fiduciary duty, and due process violations against ISP and a claim for specific performance against ISP Defendants. On January 27, 2020, ISP Defendants filed a motion to dismiss which, after complete briefing and a hearing, the trial court denied on January 21, 2021. ISP Defendants filed an answer and additional defenses on March 4, 2021. On September 1, 2021, Arp filed his First Amended Complaint in which he added a federal due process claim against individual ISP officials—Superintendent Carter, Major Smith, Major Sorrells, and Captain Wylie. On October 13, 2021, ISP Defendants removed the action to the United States District Court for the Southern District of Indiana. The parties cross-moved for summary judgment. On July 31, 2023, the District Court issued an order denying Arp's motion for summary judgment and granting, in part, ISP Defendants' motion as to the

---

[3] At issue is termination of Arp's monthly disability payments, the dependent benefit, and the insurance benefit. ISP did not terminate Arp's medical benefit, maintaining that such did not terminate until his death.

federal due process claim finding that the individual ISP officials were entitled to qualified immunity. The District Court expressly declined to address Arp's state claims and remanded the matter back to the trial court.

[19] In February 2024, Arp filed his motion for summary judgment with the trial court. ISP Defendants filed a response in opposition and a cross-motion for summary judgment. Following full briefing by the parties, the trial court held a hearing on the competing motions on June 20, 2024, and took the matter under advisement. On October 10, 2024, the trial court issued a forty-three-page order with findings of fact and conclusions of law supporting its decision to grant summary judgment in favor of ISP Defendants as to all of Arp's claims. Arp now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[20] We review a trial court's summary judgment decision de novo, using the same standard as the trial court. *Griffin v. Menard, Inc.*, 175 N.E.3d 811, 812-13 (Ind. 2021), *overruled on other grounds*. Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

[21] "The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1270 (Ind. 2009). If the movant satisfies that burden, "the burden

then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact." *Id*. "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). "We must construe all factual inferences in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party." *Hale v. SS Liquors, Inc.*, 956 N.E.2d 1189, 1191 (Ind. Ct. App. 2011).

[22] A trial court's order on summary judgment is cloaked with a presumption of validity; the party appealing from a grant of summary judgment must bear the burden of persuading this court that the decision was erroneous. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005), *trans. denied*. We may affirm the grant of summary judgment upon any basis argued by the parties and supported by the record. *Payton v. Hadley*, 819 N.E.2d 432, 438 (Ind. Ct. App. 2004).

## 1. Employee Status

[23] Arp argues that once he was determined to be disabled, he was no longer an ISP employee subject to the statutory and internal policy mandates that he resign from employment upon assuming his role as a full-time elected prosecutor.

[24]     Pursuant to the Trust Agreement,[4] an employee is any "regular police employee" and "any regular limited police employee." *Appellant's Appendix Vol. II* at 88. "The term 'Employee' shall also include *any such employee* while in disability status." *Id.* (emphasis added). The Trust Agreement also defines an "Employee Beneficiary" as any Employee or former Employee "who has complied with the terms of the Trust Agreement regarding the requirements for participation in [the Benefit System] and is entitled to receive (currently or in the future) benefits." *Id.*

[25]     As the trial court correctly determined, the designated evidence establishes as a matter of law that Arp was an employee with ISP when he assumed the role as Lawrence County Prosecutor. In conjunction with his employment, Arp elected to participate in the benefits plan established by the Trust Agreements, thereby making him an Employee Beneficiary. After he was injured in the line of duty, ISP began paying him disability benefits pursuant to the Supplemental Trust and his benefits were calculated (and in fact increased) based on his continued service as an employee in disability status.

[26]     Although ISP revoked Arp's enforcement authority, Arp remained a sworn employee, albeit in disability status, and this status was evidenced by an identification card ISP issued to Arp following the determination that he had

---

[4] There are two benefit systems under the Trust Agreement—the Pre-1987 Benefit System and the 1987 Benefit System. The 1987 Benefit System is pertinent in this case and the analysis herein relies on those provisions.

reached maximum medical improvement. Arp was also aware of the June 2014 letter that expressly stated that employees receiving LTD benefits, of whom Arp was one, were employees of ISP and governed by all of ISP's rules, regulations, and standard operating procedures. Arp understood that he remained an ISP employee subject to ISP's internal rules and procedures given that he sought to follow such procedures by requesting permission to use his official ISP photograph for campaign purposes. We also note that in the ethics opinion sought by Arp, Ethics Director Cooper advised Arp that he was still considered a state employee while receiving compensation through a disability pension.

[27] That Arp's LTD benefits were paid from a different fund than an employee in regular paid service does not negate his status as an ISP employee. Likewise, that employees in disability status may be treated differently under some internal rules and regulations than employees in regular paid service does not denote that employees in disability status are not employees. We agree with the trial court that the designated evidence establishes that Arp was an employee with ISP and therefore subject to ISP rules and regulations and the requirements of Section 12 and Regulation 6.

## 2. Breach of Contract/Unlawful Termination of Benefits[5]

[28] Arp argues that ISP breached its contractual duty to him under the Supplemental Trust and its statutory obligation under Ind. Code § 10-12-2-5(a)(1). He asserts that ISP conflates the requirements for eligibility for LTD benefits with the requirements for continuation of those benefits.

[29] Pursuant to Ind. Code § 10-12-1-8, the Trust is an agreement between ISP and the trustee "under the terms of which an actuarially sound retirement plan is established and operated for the exclusive benefit of the employee beneficiaries." The Supplemental Trust has the same effect of law as between ISP and the trustee for matters concerning the police benefit fund. *See* I.C. § 10-12-1-9.

[30] There is no dispute that Arp is a third-party beneficiary of the Supplemental Trust, that ISP terminated his LTD benefits, or that he was harmed. The only question presented for summary judgment is the interpretation of the operative provisions of the Trust Agreements, which is a question of law "particularly appropriate for summary judgment." *Hamilton v. Hamilton*, 132 N.E.3d 428, 435 (Ind. Ct. App. 2019); *Kesling v. Kesling*, 967 N.E.2d 66, 78 (Ind. Ct. App. 2012), *trans. denied*.

---

[5] Arp acknowledges that his claim for unlawful termination of benefits, i.e., breach of statutory duty, "stands or falls with his contract claim" as both claims are based on the same conduct. *Appellant's Brief* at 26 n.2.

[31] The goal in construing a trust instrument is to "give effect to the intent of the parties as expressed within the four corners of the document." *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016), *trans. denied*. Where the terms of a trust agreement, like any other contract, are unambiguous, they control. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006). A document is not ambiguous merely because parties disagree about a term's meaning. *Kelly v. Estate of Johnson*, 788 N.E.2d 933, 935 (Ind. Ct. App. 2003), *trans. denied*. Rather, language is ambiguous only if reasonable people could come to different conclusions as to its meaning. *Id*.

[32] Part II of the Supplemental Trust sets out disability benefits for Employee Beneficiaries, which may include (1) a monthly disability payment; (2) an additional stipend for dependents; (3) reimbursement for all medical expenses associated with treatment for the disability; and (4) payment of insurance premiums. Paragraph 3 of the Supplemental Trust governs monthly payments and the dependent benefit, Paragraph 29[6] governs the medical expense benefit, and Paragraph 31[7] governs the insurance benefit.

---

[6] Paragraph 29:

> In the event an Employee . . . incurs a disability through the performance of duty (as determined by the Pension Advisory Board), the Employee or the Employee's beneficiary or estate shall be entitled to receive reimbursement for all travel, medical, surgical and hospital expenses directly resulting from such disability incurred before the Employee's death.

*Appellant's Appendix Vol. II* at 167.

[7] Paragraph 31:

[33] Arp maintains that once it was determined that he was entitled to LTD benefits, the Supplemental Trust sets out the only ways in which those benefits can be terminated. Arp's argument in this regard relies on language found in Paragraph 3, which, we note, pertains only to monthly disability payments and the dependent benefit:

> In the event an Employee who is participating in the 1987 Benefit System incurs a disability through the performance of duty (as determined by the Pension Advisory Board), the Employee shall be entitled to receive monthly payments from the Police Benefit Fund which shall commence one (1) month after payment of his last regular wages from the Department and *shall continue until the earliest of*: (1) the date disability no longer exists, (2) the date death occurs, (3) *the date retirement occurs*, or (4) the later of the date the Employee is credited with twenty-five (25) Years of Service with the Department or the date the Employee has received all sick pay benefits and long term disability payments that are available to him under Section 27 (but not to exceed two such years).
>
> * * *
>
> In the event an Employee shall become totally disabled in the performance of duty (as determined by the Pension Advisory Board), he shall, in addition to the monthly disability pension payment provided herein, and *for the same period as such payment*, receive from the Police Benefit Fund forty dollars ($40) per

---

Premiums for basic supplemental life, medical, vision, and dental insurance maintained for disabled Employees through the Indiana State Police Health Care Plan and Life Insurance Plan shall be paid from the Police Benefit Fund, pursuant to the insurance policies and programs.

*Id.* at 169.

month for each dependent parent and each dependent minor child less than eighteen (18) years of age.

*Id.* at 157 (emphases supplied). Specifically, Arp argues that after he became entitled to receive LTD benefits, such LTD benefits could be terminated only if one of the four events set out in Paragraph 3 occurred. For purposes here, only one circumstance is implicated, i.e., "the date retirement occurs." *Id.*

[34] Arp argues that none of the triggering events occurred as of January 1, 2019, and he "emphatically" maintains that he did not retire. *Appellant's Brief* at 27. He points out that he never provided ISP with notice of intent to retire, to resign, or to separate from employment in any other fashion. As such, he claims that he is still entitled to his LTD benefits as none of the circumstances triggering termination of such benefits occurred. Arp mistakenly reads this provision in isolation.

[35] As mentioned, Section 12 addresses ISP employees who seek elected office. It provides in full:

> [A]n employee may serve in a part-time local elected office, However, service in part-time local elected office must be in accordance with IC 4-2-6 and the rules and employee policies of the department. *If elected to other than a part-time local elected office, the employee or appointee shall resign as an employee or appointee before assuming elected office.*

(Emphasis supplied). Consistent with the statutory mandate, Regulation 6 addresses candidacy for public office and states, in pertinent part:

1. Employees seeking election or appointment to a public office shall, prior to becoming a candidate, notify the Superintendent, in writing, of the public office being sought.

    a. Upon receipt of a written request the Superintendent shall forward it for review to the Legal Office and the Internal Investigations Section who shall maintain a database of those Department employees who are candidates for, elected to, or appointed to a partisan elected office.

    b. If elected or appointed to a position other than a part-time local elected office the employee *shall separate employment* from the Department and be off Department payroll before assuming the office.

*Appellant's Appendix Vol II* at 221 (emphasis supplied).

[36] Having determined that Arp was an employee in disability status with ISP when he sought a full-time elected office, the statutory mandate set out in Section 12, and its internal counterpart, Regulation 6, required Arp to resign or separate employment before assuming full-time elected office as the Lawrence County Prosecutor. *See Paul Terrault & Gary Cmty. Sch. Corp. v. Scheere*, 200 N.E.3d 490, 496 (Ind. Ct. App. 2022) (noting that the term "shall" carries a "mandatory as opposed to directory import"). By using the "shall resign" phrasing in Section 12, the legislature created a hard-and-fast requirement that any employment relationship between an individual and ISP must end before the date on which the individual assumes another full-time public office. This "shall resign" language places the onus directly on the employee to resign from

his or her ISP employment and legally obligates the ISP employee to relinquish his or her job as a precondition to assuming full-time elected office. When Arp did not comply with the statutory mandate (and Regulation 6), ISP properly deemed him to have resigned or separated employment as of 12:00 midnight on January 1, 2019. In doing so, ISP adhered to Indiana law and its own internal regulations governing LTD benefits.

[37] We now turn to the effect of Arp's separation from employment on his entitlement to receive LTD benefits. The Trust Agreement defines an employee as already set out herein. The definition of employee further provides that when an employee "ceases to be a regular police employee or a regular limited police employee" under ISP's rules and regulations, the employee "shall be deemed to have retired or separated solely for purposes" of the Trust Agreements and "shall no longer be an Employee" as defined in the Trust Agreement." *Appellant's Appendix Vol. II* at 88.

[38] When Arp ceased to be an employee upon assuming the role of full-time elected prosecutor, he also ceased being an employee for purposes of the Trust Agreements. At that point, he was "deemed to have retired or separated" from his employment. Thus, under Regulation 6, Arp's monthly disability payments and dependent benefits terminated when he ceased to be an employee and was deemed to have retired. Indeed, to find otherwise would mean that Arp would be violating Indiana law for refusing to resign his employment with ISP upon assuming full-time elected office and Arp would benefit from his own illegal conduct by continued receipt of LTD benefits and years of service until another

circumstance arose when ISP could terminate LTD benefits under Paragraph 3. This cannot be what the legislature intended when it enacted Section 12. Rather, the legislature's intent is clearly stated in Section 12 and echoed in Regulation 6—i.e., Arp was required to resign or separate from employment with ISP prior to assuming his elected position. The Supplemental Trust clearly provides that upon such resignation/separation from employment, Arp's LTD benefits under Paragraph 3 terminated. ISP did not breach the terms of the Supplemental Trust when it terminated Arp's monthly payments and stipend benefits under Paragraph 3.[8]

## 3. Unlawful Termination of Employment

[39]     Arp argues that ISP unlawfully terminated whatever employment status he held with ISP as of January 1, 2019, without following statutorily prescribed procedures for terminating a state police officer. Arp asserts that it is undisputed that he never tendered his resignation and he claims that ISP did not have authority to assume that he resigned.

---

[8] ISP also terminated Arp's insurance benefit as set out in Paragraph 31 of the Supplemental Trust. This LTD benefit was available to "*disabled employees* . . . pursuant to the insurance policies and programs." *Appellant's Appendix Vol. II* at 169 (emphasis supplied). As we have decided herein, Arp was no longer an ISP employee in disability status as of the day he assumed full-time elected office.

There is no dispute that ISP has continued to pay Arp's Medical Expense Benefit, even through the pendency of these proceedings. ISP maintains that pursuant to Paragraph 29 of the Supplemental Trust, those benefits are required to be paid until the employee's death if the disability occurred in the line of duty. *See Appellant's Appendix Vol. II* at 167.

[40] As already noted herein, Section 12 requires an ISP employee to resign before assuming an elected office, if other than a part-time local elected office. Regulation 6(E)(1)(b) similarly states that an employee "shall separate employment" from ISP before assuming elected office. *Appellant's Appendix Vol. II* at 221. By December 18, 2018, at the latest, ISP had informed Arp that Section 12 and Regulation 6 required him to resign from his employment with ISP before assuming elected office. Nevertheless, on December 21, 2018, Arp participated in the oath of office for the full-time elected position as the Lawrence County Prosecutor without submitting his resignation to ISP.

[41] The Indiana legislature has spoken on the matter and explicitly set out a statutory mandate, which is reiterated in internal ISP procedures—Arp was required to sever his employment relationship with ISP prior to assuming elected office. Therefore, Arp's continued employment with ISP upon assuming his elected office would violate Indiana law. Arp may not benefit from his own non-compliant conduct by continuing to receive LTD benefits and accruing years of service. This clearly is not what was intended by the Indiana legislature.

[42] Contrary to Arp's claims, the circumstances of this case do not trigger ISP procedures for discharge of a state trooper that require notice of a disciplinary action, an opportunity to be heard, review at a public hearing, findings of fact and conclusions of law, and judicial review. ISP is entitled to summary judgment on Arp's claim for unlawful termination of his employment.

## 4. Breach of Fiduciary Duty

[43] Breach of fiduciary duty is a tort claim for injury to personal property. *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010), *trans. denied*. A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of that duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. *Rapkin Group, Inc. v. Cardinal Ventures, Inc.*, 29 N.E.3d 752, 757 (Ind. Ct. App. 2015), *trans. denied*. Like a claim for breach of contract, a breach of fiduciary duty claim requires the plaintiff to prove that the alleged breach was a "substantial contributing factor" to the alleged harm. *See W & W Equipment Co., Inc. v. Mink*, 568 N.E.2d 564, 576 (Ind. Ct. App. 1994).

[44] A fiduciary relationship does not exist unless there is a relationship of trust and confidence between the parties. *Geiger & Peters, Inc. v. Berghoff*, 854 N.E.2d 842, 852 (Ind. Ct. App. 2006). "A confidential relationship exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other. Not only must there be confidence by one party in the other, but the party reposing the confidence must also be in a position of inequality, dependence, weakness, or lack of knowledge." *Id*. Moreover, "[i]t must be shown that the dominant party wrongfully abused this confidence by improperly influencing the weaker so as to obtain an unconscionable advantage." *Id*.

[45] Indiana law recognizes two categories of confidential relationships where fraud is alleged on the part of the dominant party, namely, those in which a fiduciary relationship arises by operation of law between the litigating parties, and those in which a confidential relationship in fact is shown to exist. *McKibben v. Hughes*, 23 N.E.3d 819, 827 (Ind. Ct. App. 2014); *Lucas v. Frazee*, 471 N.E.2d 1163, 1166 (Ind. Ct. App. 1984).

[46] Arp argues that ISP, as a state agency, acted as his fiduciary following his agreement to participate in the LTD benefits program governed by the Supplemental Trust. In support, he cites I.C. § 10-12-2-5, which provides that that ISP "may establish, operate, and make necessary contributions to a disability reserve account" for employees with a disability. Arp's argument centers on the duties he alleges ISP owed to him by establishing and operating an LTD benefits program. He directs us to *Good v. Ind. Teachers Retirement Fund*, 31 N.E.3d 978 (Ind. Ct. App. 2015), *trans. denied*. We find *Good* to be inapposite. In *Good*, the court noted that the plaintiff had a fiduciary relationship with the Indiana Public Retirement System (INPRS) because INPRS was statutorily required to hold her retirement funds in trust pursuant to statute. Here, ISP does not hold retirement funds in trust; ISP's role, as set out by statute, was to establish, operate, and contribute to a disability reserve account if it so chose.

[47] By choosing to establish a disability benefit system, ISP did not thereby create a fiduciary relationship between itself and its employees. Rather, pursuant to the Trust Agreement, the Treasurer of the State of Indiana was identified as the

Trustee. Further, the Trust established the Pension Advisory Board (the Board), which is chaired by the ISP Superintendent, to administer the Trust. Specifically, the Board carries out the duties to approve pensions, adjust compensation used for LTD benefit purposes, formulate policies, and assist in the administration of the trusts, including by determining whether individuals have "incur[red] a disability," the "amount of monthly disability payments" they are due, and whether a beneficiary's benefits should be adjusted. *Appellant's Appendix Vol. II* at 227; *see also* I.C. § 10-12-2-3 (a)(6) (confirming that the Board "determine[s] eligibility for benefits" and "compute[s] benefits of participants or beneficiaries").

[48] Although Superintendent Carter chaired the Board, Arp did not put forth any evidence that Superintendent Carter made any misstatements relative to Arp's fiduciary duty claims, nor did he put forth evidence that Superintendent Carter deliberately withheld information from him. *Cf. Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 547-48 (7th Cir.1997) (distinguishing between ERISA pension fund trustees and ministerial employee, who sent wrong paperwork to pension plan participant and intended beneficiary, in rejecting latter's breach of fiduciary duty claim; "Trustees did not make the misstatement on which [the plaintiff's] fiduciary duty claim is based—[the employee] did. Significantly, no evidence suggests that the Trustees either authorized, participated in, or had knowledge of [the employee's] misstatement, or that the Trustees deliberately withheld information from [the employee] about the proper means of making a beneficiary designation."), *cert. denied* (1998).

[49] Finally, we also note that under Indiana law, "a person is presumed to understand the documents which he signs and cannot be released from the terms of a contract due to his failure to read it." *Clanton v. United States of Am.*, 686 N.E.2d 896, 899-900 (Ind. Ct. App. 1997). Here, in addition to having elected to participate in the benefits program set out in the Trust Agreements, we observe, as did the trial court, that the terms of the Trust Agreements were readily available to Arp on ISP's website. As noted above, the terms clearly state that an employee "shall separate employment" from ISP upon assuming the duties of a full-time elected office. *Appellant's Appendix Vol. II* at 221. The Supplemental Trust expressly states that upon separation of employment, monthly employee benefits, dependent benefits, and insurance benefits shall cease. Arp therefore had at least equal knowledge of the terms of the Trust Agreements as relating to whether he remained entitled to continued receipt of LTD benefits upon assuming full-time elected office. Additionally, Arp is charged with knowing his election to a full-time elected office required him to resign as an ISP employee before assuming office pursuant to Section 12. *See P.S. v. T.W.*, 80 N.E.3d 253, 256 (Ind. Ct. App. 2017) (noting that every person in Indiana is charged with knowing the law of the state).

[50] Arp was made aware that he needed to resign prior to December 31, 2018, and that his LTD benefits would terminate upon assuming his duties as an elected prosecutor. Albeit faced with a difficult decision, Arp could have chosen to forego the full-time elected position and continue receiving his LTD benefits. He chose, however, to proceed, knowing the repercussions of assuming office.

Based on the foregoing, we conclude that the designated evidence does not establish the existence of a fiduciary relationship between Arp and ISP, either at law or in fact. Having reached this conclusion, we need not address Arp's arguments about breach or ISP's arguments that the Indiana Tort Claims Act immunized ISP from liability for breach of fiduciary duty.

## 5. Due Course of Law

Arp asserts that ISP violated his right to due course of law under the Indiana Constitution when it separated his employment with ISP and terminated his LTD benefits without affording him meaningful notice and an opportunity to be heard. Article 1, § 12 of the Indiana Constitution states that "[A]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Indiana's Due Course of Law provision is analogous to the Federal Due Process Clause and is analyzed the same way. *See Melton v. Ind. Athletic Trainers Bd.*, 53 N.E.3d 1210, 1215 (Ind. Ct. App. 2016). Under either, a plaintiff must show that he was deprived of a protected property interest without the requisite process. *Bradley v. Vill. of Univ. Park, Ill.*, 929 F.3d 875, 882-83 (7th Cir. 2019). A property interest may arise from a statute, ordinance, or contract. *Gansert v. Meeks*, 384 N.E.2d 1140, 1143 (Ind. Ct. App. 1979).

"To have a property interest in a benefit a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Shook Heave &*
*Env't. Const. Grp. v. City of Kokomo*, 632 N.E.2d 355, 361 (Ind. 1994) (same).

[54] Here, Arp is not entitled to continued employment with ISP in light of the statutory mandate that he resign from his employment with ISP prior to assuming full-time local elected office. *See* I.C. § 10-11-2-12(d). As noted herein, this statutory mandate is incorporated into the Supplemental Trust under Regulation 6. Arp chose to assume his role as the elected prosecutor of Lawrence County and thus, he has no legitimate claim of entitlement to continued employment with ISP.

[55] Under the terms and definitions of the Trust Agreements, Arp's LTD benefits (monthly disability payment and dependent benefit) were to continue until he separated employment, at which time those LTD benefits terminated. Because Arp's election and assumption of the office of Lawrence County Prosecutor required that he separate from ISP employment, he was no longer entitled to receive LTD benefits that, under the terms of the Supplemental Trust, terminated upon such separation. ISP was entitled to summary judgment on Arp's claim for violations of the due course of law provision under the Indiana Constitution.

## 6. Specific Performance

[56] Arp argues that he is entitled to specific performance of ISP Defendants' contractual obligations to him. Specifically, Arp seeks reinstatement of his

LTD benefits and credit for accrued years of service. Arp's request for specific performance fails.

[57] "[S]pecific performance is an equitable remedy, and the power of a court to compel specific performance is an extraordinary power. Thus, the equitable remedy of specific performance is not available as a matter of right." *Devlin v. de Gorter*, 257 N.E.3d 807, 820 (Ind. Ct. App. 2025) (quoting *Kesler v. Marshall*, 792 N.E.2d 893, 896-97 (Ind. Ct. App. 2003), *trans. denied*). Indeed, "[a] court may not grant specific performance when the subject matter of the contract no longer exists or is beyond the control of the parties." *Risk v. Thompson*, 147 N.E.2d 540, 545 (1958). In other words, "courts of equity will only order specific performance when the contract is capable of being performed." *UFG, LLC v. Southwest Corp.*, 848 N.E.2d 353, 361 (Ind. Ct. App. 2006), *trans. denied*.

[58] Reinstatement of Arp's LTD benefits is not capable of being enforced. Arp chose to assume the role of the elected prosecutor of Lawrence County and in doing so, he was statutorily required to resign from his ISP employment. No longer an ISP employee, Arp's LTD benefits, save his medical benefit, terminated upon such separation from employment. The court cannot go against state law and the internal regulations of ISP consistent therewith and reinstate his LTD benefits. Arp is not entitled to specific performance.

[59] In summary, we find that there are no genuine issues of material fact and that ISP Defendants are entitled to judgment as a matter of law on Arp's claims for

breach of contract, breach of fiduciary duty, violation of procedural due process, and request for specific performance.

[60] Judgment affirmed.

Brown, J. and Tavitas, J., concur.

ATTORNEYS FOR APPELLANT

A. Scott Chinn
Brian J. Paul
Stephanie L. Gutwein
Matthew K. Griffin
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Evan Matthew Comer
Supervising Deputy Attorney General

Steven Hosler
Deputy Attorney General
Indianapolis, Indiana